John W. McINNIS

v.

MAINE UNEMPLOYMENT INSUR-
ANCE COMMISSION et al.

Supreme Judicial Court of Maine.

Argued June 11, 1986.
Decided Aug. 11, 1986.

Michael J. Levey, Winthrop, Donald F. Fontaine (orally), Portland, for plaintiff.

Leanne Robbin, Pamela W. Waite (orally), Asst. Attys. Gen., Augusta, Robert Moore, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Claimant John McInnis appeals the judgment of the Superior Court (Cumberland County) affirming the decision of the Maine Unemployment Insurance Commission (Commission) denying him unemployment benefits. The Commission, as the third and final level of administrative decision-making, found that McInnis was discharged by his employer, Regional Transportation Program, Inc. (R.T.P.) for misconduct connected with his employment, 26 M.R.S.A. § 1193(2) (Pamph. 1985), and that therefore he was temporarily disqualified from receiving unemployment benefits. The sole issue on appeal is whether the acts of McInnis leading to his discharge fell within the statutory definition of misconduct, 26 M.R.S.A. § 1043(23) (1974). We find that the Commission was not in error when it found that McInnis was discharged for misconduct,[1] and we therefore deny claimant's appeal.

McInnis was employed as a part-time driver for R.T.P. from June 28, 1983, until April 17, 1984. During his last five months of employment he was involved in three accidents with stationary objects. First, on November 17, 1983, while driving a full-sized bus on a practice run without passengers, McInnis cut a corner too sharply and hit a fire hydrant, breaking an outlet cap on the hydrant and damaging the bus. Second, on February 9, 1984, while driving a small van transporting elderly passengers, McInnis backed out of a driveway and damaged the fender of a parked car. His supervisor afterwards warned him that the second accident was preventable and therefore unacceptable to R.T.P.

On April 17, 1984, McInnis was involved in the third, and most serious, accident. He was driving a medium-sized bus equipped with a wheelchair lift on the right side. He stopped, according to schedule, to pick up some handicapped persons, some of whom were in wheelchairs. After he had helped the last passenger into the bus, McInnis returned to the driver's seat without having retracted the wheelchair lift or closed the side door. The unretracted lift protruded more than three feet from the right side of the bus. As McInnis backed the bus out of the driveway he looked only in the rear view mirror; thus he failed to see the wheelchair lift protruding from the side of the bus. He also failed to respond to the large red warning light on the dashboard designed to alert the driver that a door was open. As he drove down the street, the wheelchair lift hit the trunk and rear window of a car in the lane to the right waiting at a stop light. R.T.P. promptly discharged McInnis. Soon thereafter he applied for unemployment benefits.

An employee discharged for misconduct connected with his work is disqualified from receiving unemployment benefits until he "has earned 4 times his weekly benefit amount in employment by an employer." 26 M.R.S.A. § 1193(2). The statute defines "misconduct" as

conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or *in carelessness or negligence of such degree or recurrence as to manifest equal culpability,* wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

26 M.R.S.A. § 1043(23) (emphasis added).

The Commission concluded that McInnis was discharged for misconduct connected with his work within the meaning of sections 1193(2) and 1043(23) because his con-

---

1. When, as here, the Superior Court acts as an appellate court reviewing an action of an administrative board, the Law Court directly examines the record developed before the board. *Shackford & Gooch, Inc. v. Town of Kennebunk,* 486 A.2d 102, 104 (Me.1984).

duct, though not deliberate, was so violative of interests fundamental to his employer as to be tantamount to an intentional disregard of those interests. In reaching that conclusion the Commission relied upon the language of section 1043 and *Moore v. Maine Department of Manpower Affairs*, 388 A.2d 516, 519 (Me.1978). It correctly determined that McInnis could be disqualified from receiving benefits only if an objective, two-pronged test was met: First, R.T.P.'s employee standards or expectations must have been reasonable; and second, McInnis's violation of those standards must have been unreasonable under all of the circumstances.

 Under the first prong of that test, the Commission found that as a public passenger transporter R.T.P.'s chief interest was in the "safe transportation of individuals, many of whom are handicapped," and in the "maintenance of the public's confidence that the service it provides is safe." The Commission went on to find that R.T.P. had a rule that its employees operate its motor vehicles in a safe manner, and that the rule was objectively reasonable.

Under the second prong, the Commission found that McInnis had violated his employer's rule three times by hitting stationary objects. In addition, it determined that the circumstances of the third accident "indicate a serious breach of the employer's interests." Specifically, the Commission found that by operating the bus with the door open and the wheelchair lift down, McInnis had 1) endangered his handicapped passengers; 2) endangered pedestrians in the area; and 3) endangered automobiles in the street, a danger that was realized when the wheelchair lift hit a car. Had McInnis used the right side mirror or paid attention to the dashboard warning light, he would have seen what the Commission termed the "obvious danger" that his conduct posed to his passengers and the pedestrian and motoring public. Based on those findings, the Commission determined that McInnis's conduct was unreasonable under all of the circumstances.

The Commission committed no error in its assessment of the severity of the breach of R.T.P.'s interests by McInnis or in its conclusion that his conduct falls within the statutory definition of misconduct. Section 1043 specifically includes within the definition of misconduct careless or negligent acts of such *degree* that they are equivalent to intentional or deliberate violations of an employer's standards. In the present case McInnis's third accident by itself was an extremely serious violation of R.T.P.'s interests. The circumstances of that accident, as found by the Commission, clearly demonstrate the degree of negligence or carelessness by McInnis necessary to come within the statutory definition of misconduct. Nothing in the cases cited to us by McInnis, namely, *Nisson v. Maine Employment Security Commission*, 455 A.2d 945 (Me.1983), and *Sheink v. Maine Department of Manpower Affairs*, 423 A.2d 519 (Me.1980), can be interpreted to require any showing of a more serious degree of carelessness or negligence than that displayed by McInnis.

The entry is:

Judgment affirmed.

All concurring.